UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| NEIL SMITH et al., | ) |  |
|---|---|---|
|  | ) |  |
| Plaintiffs, | ) |  |
|  | ) | No. 4:14CV01559 ERW |
| v. | ) |  |
|  | ) |  |
| NATIONAL FOOTBALL LEAGUE | ) |  |
| PLAYERS ASSOCIATION, et al., | ) |  |
|  | ) |  |
| Defendants. | ) |  |
|  | ) |  |

## **MEMORANDUM AND ORDER**

This matter comes before the Court on Plaintiffs' "Motion to Remand" [ECF No. 9].

## **I. BACKGROUND**

Plaintiffs Neil Smith, Ladell Betts, and Anthony Davis filed a Petition in the 22nd Judicial Circuit of Missouri, St. Louis, on July 17, 2014 [ECF No. 1-1]. They named National Football League Players' Association ("NFLPA"), Raymond Lester Armstrong, III, Troy Vincent (who has since been dismissed as a defendant), and Kevin Mawae as defendants. Plaintiffs' petition asserts claims for fraudulent concealment, fraud, negligent misrepresentation, negligence, negligent hiring (against NFLPA only), negligent retention (against NFLPA only), medical monitoring, and civil conspiracy. On August 11, 2014, Plaintiffs filed a First Amended Petition, adding Vaughn Booker, Ron Dugans, Sheddrick Gurley, Chad Johnson, Kendyll Pope, Corey Sawyer, Shevin Smith, Tarlos Thomas, Tamarick Vanover, and Keith Williams as Plaintiffs [ECF No. 4]. On September 10, 2014, Defendant NFLPA removed the Petition to this Court pursuant to 28 U.S.C. §§ 1441 and 1446 [ECF No. 1]. On September 11, 2014, Defendant NFLPA moved to consolidate this case with *Ballard et al. v. National Football League Players*

1

*Association*, Case No. 4:14-cv-01267 [ECF No. 5]. On September 18, 2014, Plaintiffs filed a Motion to Remand this case to the 22nd Judicial Circuit of Missouri, pursuant to 28 U.S.C. § 1447(c) [ECF No. 9]. Plaintiffs also filed a Memorandum in Support of Motion to Remand [ECF No. 10]. Defendant NFLPA's Opposition to Motion to Remand was filed on October 16, 2014. Plaintiffs filed a Reply Memorandum in Support of Motion to Remand on October 23, 2014 [ECF No. 25].

## II. FACTS

"The allegations of the complaint as set forth at the time the petition was removed are controlling." *Crosby v. Paul Hardeman, Inc.*, 414 F.2d 1, 3 (8th Cir. 1968) (citing *Pullman Co. v. Jenkins*, 305 U.S. 534, 537-38 (1939)). Plaintiffs are former National Football League ("NFL") players, who had playing careers of various lengths, ranging from 1988 to 2010. During their respective careers, Plaintiffs suffered "multiple repetitive traumatic head impacts and concussions during practices and games." These injuries were neither acknowledged nor treated while Plaintiffs were players. "Defendants' wrongful conduct . . . directly caused or contributed to cause" Plaintiffs "to suffer harm, including . . . chronic traumatic encephalopathy ("CTE"), which is "caused by repetitive sub-concussive and/or concussive blows to the head."

Plaintiffs, throughout their careers, paid money to the NFLPA as association dues. Defendants assured Plaintiffs they would protect them, and owed them a fiduciary duty. Defendants state they would act in the players' best interests. However, the NFLPA did not spend significant funds on research into ways to mitigate or prevent brain trauma. The NFLPA also failed to certify medical personnel treating players, despite having a duty to do such. Plaintiffs relied on Defendants' assertions to their detriment.

Defendants were in a superior position of knowledge, and knew the dangers and risks associated with repetitive head impacts and concussions. Despite this, they knowingly concealed the information from Plaintiffs. Defendants also fraudulently misrepresented there was no link between head impacts and cognitive decline.

## III. STANDARD

A claim may be removed to federal court only if it could have brought in federal court originally. *Peters v. Union Pac. R. R. Co.*, 80 F.3d 257, 260 (8th Cir. 1996). The burden is on the defendant to prove by a preponderance of the evidence the Court has subject-matter jurisdiction. *In re Prempro Prods. Liab. Litig.*, 591 F.3d 613, 619 (8th Cir. 2010). Removal statutes are to be strictly construed against removal and all doubts should be resolved in favor of remand. *Nichols v. Harbor Venture, Inc.*, 284 F.3d 857, 861 (8th Cir. 2002); *In re Bus. Men's Assur. Co. of Am.*, 992 F.2d 181, 183 (8th Cir. 1993).

## IV. DISCUSSION

Defendants removed this matter to this Court for three reasons [ECF No. 1]. First, Defendants argued removal was proper under Sections 8(b) and 9(a) of the National Labor Relations Act ("NLRA") because the claims made by Plaintiffs constitue claims for breach of the duty of fair representation. Second, Defendants claimed removal was proper under Section 301 of the Labor Management Relations Act ("LMRA"), because any additional duties Defendants owed to Plaintiffs would have to arise from the NFL Collective Bargaining Agreement ("CBA"). Finally, Defendants contended removal was proper because the one non-diverse defendant was improperly joined.

Plaintiffs request remand for three reasons. First, they argue Defendants' reliance on the duty of fair representation is improper [ECF No. 10 at 3]. Second, they argue federal-question

jurisdiction does not exist under § 301 of LMRA in this case [ECF No. 10 at 9]. Finally, they argue complete diversity is lacking because one of the defendants shares a state of residence with at least one of the Plaintiffs [ECF No. 10 at 12]. For the foregoing reasons, this Court denies Plaintiffs' Motion to Remand.

### A. *Duty of Fair Representation*

Plaintiffs contend the duty of fair representation does not completely preempt state-law claims; the preemption by the duty is simply ordinary conflict preemption, which can be asserted by Defendants as a defense in state court. They argue the duty of fair representation is a judicially-evolved duty, and only statutory duties can completely preempt a state-law claim. Plaintiffs further state their claims are independent of the duty of fair representation because the NFLPA was not their exclusive bargaining representative. They assert they are former professional football players, and the NFLPA only owes a duty of fair representation to its current members. Plaintiffs also maintain their claims are simply not subsumed within the duty of fair representation. Rather, they state their claims are based on a duty the NFLPA assumed voluntarily and separately from the CBA.

Defendants argue the duty of fair representation does completely preempt state law claims because it is a statutory duty arising from federal law. They also maintain Plaintiffs cannot escape preemption because they are former players. Defendants state Plaintiffs' claims are based on what the NLFPA could have done for Plaintiffs while they were playing, and Plaintiffs are arguing the NFLPA continued to owe them a duty of fair representation after retirement. Defendants also state Plaintiffs' claims are subsumed within the duty of fair representation, because Plaintiffs have not identified a contract where the NFLPA assumed a separate duty to its members outside the CBA.

"Article III of the Constitution gives the federal courts power to hear cases 'arising under' federal statutes." *Merrell Dow Pharm. Inc. v. Thompson*, 478 U.S. 804, 807 (1986) (citing U.S. Const. Art. III, § 2). "The presence or absence of federal-question jurisdiction is governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987). The "artful pleading" doctrine allows a court to "scrutinize the complaint in the removed case to determine whether the action, though ostensibly grounded solely on state law, is actually grounded on a claim in which federal law is the exclusive authority." *Federated Dept. Stores, Inc. v. Moitie*, 452 U.S. 394, 408 (1981). Where "the pre-emptive force of a statute is so 'extraordinary'" it completely preempts a state-law claim, the claim is converted into a federal claim. *Caterpillar*, 482 U.S. at 393. However, "a case may not be removed to federal court on the basis of a federal defense, including the defense of preemption, even if the defense is anticipated in the plaintiff's complaint, and even if both parties concede that the federal defense is the only question truly at issue." *Id.*

"The 'well-pleaded complaint rule' is the basic principle marking the boundaries of federal question jurisdiction of federal district courts. *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 63 (1987). "It is long settled law that a cause of action arises under federal law only when the plaintiff's well-pleaded complaint raises issues of federal law." *Id.* Federal preemption is ordinarily a defense to a state law claim, and federal defenses, since they do not appear on the complaint, do not authorize removal to federal court. *Id.* However, one exception is when federal law "so completely pre-empt[s] a particular area that any civil complaint raising this select group of claims is necessarily federal in character." *Id.* at 63-64.

5

Precedent strongly suggests (and the parties appear to agree) state law claims can only be preempted by federal statute, not by federal common law. *See id.* ("Congress may so completely pre-empt . . . ."); *Caterpillar*, 482 U.S. at 393 ("On occasion, the Court has concluded that the pre-emptive force of a statute is so 'extraordinary' that it 'converts an ordinary state common-law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule.'") (quoting *Metropolitan*, 481 U.S. at 63-64); *Aetna Health Inc. v. Davila*, 542 U.S. 200, 207 (2004) ("'When a federal statute wholly displaces the state-law cause of action through complete pre-emption,' the state claim can be removed.") (quoting *Beneficial Nat. Bank v. Anderson*, 539 U.S. 1, 8 (2003)).

### 1. Whether Plaintiffs' Claims are Actually Claims of Breach of the Duty of Fair Representation.

Plaintiffs argue their claims are based on a duty the NFLPA assumed separately and voluntarily from its duties to them as their exclusive bargaining agent. A plaintiff cannot avoid removal by failing to plead necessary federal questions. *Rivet v. Regions Bank of La.*, 522 U.S. 470, 475 (1998) (citing *Franchise Tax Bd. of Cal. v. Construction Laborers Vacation Trust for S. Cal.*, 463 U.S. 1, 14 (1983)). "If a court concludes that a plaintiff has 'artfully pleaded' claims in this fashion, it may uphold removal even though no federal question appears on the face of the plaintiff's complaint. The artful pleading doctrine allows removal where federal law completely preempts a plaintiff's state-law claim." *Rivet*, 522 U.S. at 475.

The duty of fair representation is the duty to act as the exclusive bargaining agent in a fair manner. *Int'l Bhd. of Elec. Workers v. Foust*, 442 U.S. 42, 46 (1979). This duty states "[a] union must represent fairly the interests of all bargaining-unit members during the negotiation, administration, and enforcement of collective-bargaining agreements." *Id*. at 47. The duty of fair representation "arises . . . from the grant under § 9(a) of the NLRA . . . of the union's exclusive

6

power to represent all employees in a particular bargaining unit." *Breininger v. Sheet Metal Workers Int'l Ass'n Local Union No. 6*, 493 U.S. 67, 86-87 (1989). "'The undoubted broad authority of the union as exclusive bargaining agent in the negotiation and administration of a collective bargaining contract is accompanied by a responsibility of equal scope, the responsibility and duty of fair representation.'" *Id.* at 88 (quoting *Humphrey v. Moore*, 375 U.S. 335, 342 (1964)). The NFLPA is bound by the duty of fair representation.

"A breach of the duty of fair representation occurs only when a union's conduct toward a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith." *Vaca v. Sipes*, 386 U.S. 171, 190 (1967). This rule does not apply only to union actions with regards to the collective bargaining agreement. It applies to all union activity. *Air Line Pilots Ass'n, Int'l v. O'Neill*, 499 U.S. 65, 67 (1991). If the NFLPA has acted towards members of the collective bargaining agreement in bad faith, it has breached the duty of fair representation.

The complaint clearly alleges Defendants acted towards Plaintiffs, members of the collective bargaining unit at the time of the conduct, in bad faith, by alleging Defendants undertook fraudulent behavior against Plaintiffs. Any bad faith conduct by the union against a member of the collective bargaining unit is a breach of the duty of fair representation. The complaint does not state a claim on its face for breach of such a duty, but it is clearly present. All claims regarding bad faith by Defendants are claims of breach of the duty of fair representation.[1]

### 2. Whether a Claim for Breach of Duty of Fair Representation Completely Preempts State Law Claims.

Plaintiffs contend a claim for breach of duty of fair representation does not completely preempt state-law claims. Federal jurisdiction exists over cases involving the duty of fair

---

[1] Therefore, the counts of fraudulent concealment, fraud, and civil conspiracy, being claims Defendants acted in bad faith towards members of the union, are breaches of the duty of fair representation. The other claims, however, are for mere negligence, which is not a breach of the duty of fair representation. *Rawson*, 495 U.S. at 372-73.

representation. *Commc'ns Workers of Am. v. Beck*, 487 U.S. 735, 743 (1988) ("[O]ne such remedy over which federal jurisdiction is well settled is the judicially implied duty of fair representation.") (citing *Vaca v. Sipes*, 386 U.S. 171 (1967)). In fact, the duty arises from federal statute. *United Steelworkers of Am., AFL-CIO-CLC v. Rawson*, 495 U.S. 362, 373 (1990) ("The Union's duty of fair representation arises from the National Labor Relations Act itself.") (citing *Breininger*, 493 U.S. 67, 86–87 (1989)); *DelCostello v. Teamsters*, 462 U.S. 151, 164 (1983); *United Parcel Service, Inc. v. Mitchell*, 451 U.S. 56, 66 (1981) (Stewart, J., concurring in judgment). "Because a union enjoys the exclusive right to represent its members in the collective bargaining process, the federal labor laws impose upon the union a duty of fair representation 'akin to the duty owed by other fiduciaries to their beneficiaries.'" *Beavers v. United Paperworkers Int'l Union*, 72 F.3d 97, 100 (8th Cir. 1995).

Although the Eighth Circuit has not addressed this preemption question, other circuit courts appear to agree: where there is a claim for breach of duty of fair representation, it completely preempts state law claims. "A union's rights and duties as the exclusive bargaining agent in carrying out its representational functions is precisely such an area; Congress has 'occupied th(e) field and closed it to state regulation.'" *Condon v. Local 2944, United Steelworkers of America, AFL-CIO, CLC*, 683 F.2d 590, 594-95 (1st Cir. 1982) (citing *Teamsters v. Morton*, 377 U.S. 252, 261 (1964)); *see also BIW Deceived v. Local S6, Indus. Union of Marine and Shipbuilding Workers of America, IAMAW Dist. Lodge 4*, 132 F.3d 824, 830 (1st Cir. 1997); *Thomas v. Nat'l Ass'n of Letter Carriers*, 225 F.3d 1149, 1158 (10th Cir. 2000) ("Where a plaintiff's allegations fall within the scope of the duty of fair representation, federal labor law governs and ordinarily preempts any state-law claims based on those allegations."); *Richardson v. U.S.*, 864 F.2d 1162, 1169-70 (5th Cir. 1989); *Scott v. Graphic*

*Commc'ns. Int'l Union, Local 97-B*, 92 Fed. Appx. 896, 904 (3rd Cir. 2004). Therefore, claims for the breach of duty of fair representation are completely preempted.

>  3. Whether the Plaintiffs' Claims are Independent of the Duty of Fair Representation Because They are Former Players.

Plaintiffs argue their claims are independent of the duty of fair representation because they are former players. A union owes no statutory duty of fair representation to former employees and retirees. *See Allied Chem. & Alkali Workers of Am., Local Union No. 1 v. Pittsburgh Plate Glass Co., Chem. Div.,* 404 U.S. 157, 180-82 (1971) (holding retirees are not employees in the bargaining unit). *But see BIW Deceived*, 132 F.3d at 833 ("[A] union owes a duty of fair representation to nonmembers whom it has undertaken constructively to represent.") Therefore, any breaches of the duty of fair representation while a Plaintiff was retired do not provide a claim. *Merk v. Jewel Companies, Inc.*, 848 F.2d 761, 767 (7th Cir. 1988) (finding the union owed no continuing duty of fair representation to former employees). *Cf. Washington v. Service Emps. Int'l. Union, Local 50*, 130 F.3d 825, 826 (8th Cir. 1997) (Finding the argument a "statute of limitations was tolled because of continuing violation" was without merit). However, if the alleged breach occurred while the employee was employed, then there was a duty at the time of the breach. *See Foust*, 442 U.S. at 42 (finding a lack of duty of fair representation at the time of the lawsuit was not reason to dismiss the case). To find otherwise would deprive discharged workers the ability to take their grievance to federal court if the union failed to perform its duties.

Plaintiffs allege Defendants committed acts of fraud against them while they were players.[2] For example, the first allegation of fraudulent behavior states the NFLPA supplied false and misleading information to players in 1994. There are allegations similar conduct took

---

[2] "Defendants knowingly and fraudulent concealed from then-current . . . professional football players . . . the risks of head injuries in games and practices . . . " [ECF No. 4 at ¶ 149].

9

place throughout the rest of the 1990s and 2000s, and into the present decade. Thus, there is a range from 1994 to at least 2012 where Defendants are alleged to have engaged in bad faith conduct against members of the collective bargaining unit. Every single plaintiff was a "current member" of the NFLPA for at least some time between 1994 and 2012. Therefore, the duty of fair representation applied to Plaintiffs at the time, and the allegations indicate breaches of said duty occurred while Plaintiffs were playing. Their claims are not independent of the duty of fair representation and the duty of fair representation completely preempts their claims.

*B. Section 301 of the LMRA*

Defendants claimed removal was also proper under Section 301 of the LMRA, because any additional duties Defendants owed to Plaintiffs outside of the duty of fair representation would have to arise from the NFL Collective Bargaining Agreement ("CBA"). Section 301 of the LMRA applies to breaches of a collective bargaining agreement ("CBA"). *Williams v. Nat'l Football League*, 582 F.3d 863, 873 (8th Cir. 1998). Federal law governs breaches of a CBA. *Textile Workers Union v. Lincoln Mills,* 353 U.S. 448, 450-51 (1957) ("301(a) . . . authorizes federal courts to fashion a body of federal law for the enforcement of these collective bargaining agreements."). Where § 301 applies, it completely preempts state-law claims. *Williams*, 582 F.3d at 874. "In applying the section 301 preemption doctrine, [a court] begins with the claim itself, and appl[ies] a two-step approach in order to determine if the claim is sufficiently independent to survive section 301 preemption." *Id*. "First, a state-law claim is preempted if it is based on a provision of the CBA, meaning that the CBA provision at issue actually sets forth the right upon which the claim is based." *Id*. "Second, section 301 preemption applies where a state-law claim is dependent upon an analysis of the relevant CBA, meaning that the plaintiff's state-law claim requires interpretation of a provision of the CBA." *Id.* A court may look to the

CBA to determine if the claim would be substantially dependent upon it. *See Osborn v. U.S.*, 918 F.2d 724, 728 (8th Cir. 1990) ("The district court has authority to consider matters outside the pleadings when subject-matter jurisdiction is challenged.").

Plaintiffs assert federal-question jurisdiction does not exist in this case under § 301 of the LMRA. They contend, as retirees, they are outside of the bargaining unit, therefore, the CBA does not apply to them. Plaintiffs also argue their claims are not substantially dependent upon or inextricably intertwined with analysis of the CBA. Plaintiffs claim Defendants failed to show how the CBA provides the source of the duty involved in Plaintiffs' claims. Rather, Plaintiffs argue the undertakings by Defendants were voluntary assumptions of duty, not arising from the CBA. Therefore, Plaintiffs state, the claims do not arise under § 301 of the LMRA.

Defendants argue Plaintiffs' status as retirees is not relevant to LMRA preemption. Defendants contend whether the complaint puts CBA rights or interpretation at issue is what is important to the preemption analysis. Defendants assert interpretation of the CBA is required in this case, thus, the LMRA completely preempts this matter.

1. Relevance of Retiree Status to LMRA Preemption

Plaintiffs argue they are outside of the bargaining unit because they are retirees, and the CBA does not apply to retirees, therefore, their claims are not preempted under § 301. The Court disagrees. It is true the collective-bargaining obligation of a union extends only to terms and conditions of employment of the employer's employees. *Allied*, 404 U.S. at 166. The meaning of "employees" does not ordinarily include retired workers. *Id.* at 168. But this does not preclude retirees from bringing a claim under § 301 of the LMRA. For example, a union and an employer can choose to bargain over benefits for retirees, and retirees can enforce any benefits

11

they acquire through such bargaining. *Atwater v. Nat'l Football League Players' Ass'n*, 626 F.3d 1170, 1185 (11th Cir. 2010).

The status of the Plaintiffs as retirees can be relevant. Although in *Atwater*, the fact the plaintiffs were retirees was irrelevant, it was because the rights specifically bargained for extended to retirees as well as current players. *Id.* As *Allied* noted, unless the union and retirees agree otherwise, retirees are otherwise not employees, and the union it owes no duty to them. *Allied*, 404 U.S. at 172. Even if the duties of the union are only to current members of the collective bargaining unit, the events occurred while Plaintiffs were current members of the collective bargaining unit, as noted *supra* IV.A.3. Regardless if this court construes the matter to arise under fair representation or § 301, the relevant events occurred at least at some point during each of Plaintiffs' careers.[3] The fact Plaintiffs are now retirees does not preclude preemption of claims based on events which occurred while Plaintiffs were members of the bargaining unit.

2. Whether Defendants Failed to Meet Burden of Establishing Preemption

Plaintiffs argue Defendants failed to meet the burden of establishing the claims are preempted by § 301. The party asserting federal preemption of state law bears the burden of persuasion. *Williams v. Nat'l Football League*, 582 F.3d 863, 880 (8th Cir. 2009). Defendants argue the NFL CBA contains a number of provisions applicable to player safety and health. If these provisions expressly place a duty on the NFLPA to keep players informed about health risks arising from participating in the NFL, or if the claims substantially depend on an interpretation of a provision in the CBA, § 301 will preempt the state law claims. To determine if the claims are either based on an express duty of the CBA, or substantively depend on the interpretation of a provision of the CBA, an analysis of the elements of the claims is required.

---

[3] There may be a need to analyze each CBA in effect during the alleged conduct by Defendants, to see if the duties of said CBAs were indeed breached by Defendants' conduct.

12

*Hanks v. General Motors Co.*, 859 F.2d 67, 69 (8th Cir. 1988) (finding a state tort claim was not preempted as none of its elements required interpretation of the CBA). If one element of the claim requires interpretation of the CBA, the claim is preempted. *Id.*[4] This Court looks to the NFL CBA to see if Plaintiffs' claims would be dependent upon its analysis. *Osborn*, 918 F.2d at 728.

### i. Negligent Misrepresentation

In Missouri, "[t]he elements of negligent misrepresentation are: (1) the speaker supplied information in the course of his business; (2) because of the speaker's failure to exercise reasonable care, the information was false; (3) the information was intentionally provided by the speaker for the guidance of limited persons in a particular business transaction; (4) the hearer justifiably relied on the information; and (5) due to the hearer's reliance on the information, the hearer suffered a pecuniary loss." *Renaissance Leasing, LLC v. Vermeer Mfg. Co.*, 322 S.W.3d 112, 134 (Mo. 2010).

The key element is "the hearer justifiably relied on the information". This element implies the hearer had a valid reason to rely on the information provided. *Green v. Ariz. Cardinals Football Club LLC*, No. 4:14CV461CDP, 2014 WL 1920468, at *7 (E.D. Mo., May, 14, 2014) (finding where the justification for reliance is based on a common law duty, it does not require interpretation of a CBA). The first provision Defendants reference is Article 39, "Players' Rights to Medical Care and Treatment." This Court's attention is drawn to section 1, subsection (d) of that article, "NFLPA Medical Director". <u>NFL CBA 2011</u>, pg. 171. The most pertinent language is as follows: "The NFL recognizes that the NFLPA Medical Director has a critical role in advising the NFLPA on health and safety issues." *Id*. This language suggests the

---

[4] Finding one claim is preempted would likely establish supplemental jurisdiction, thus, once preemption is found, this Court will not look to other claims. *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966).

13

NFLPA should be well-informed on matters of health and safety, and should be a reliable source of information.

Section 3 of Article 39, "Accountability and Care Committee", is also worth examining. "The parties agree to establish an Accountability and Care Committee, which will provide advice and guidance regarding the provision of preventive, medical, surgical, and rehabilitative care for players by all clubs during the term of this Agreement. The Committee shall consist of the NFL Commissioner and the NFLPA Executive Director (or their designees)." *Id.* This language confers upon the NFLPA, and the other parties to the agreement, a duty to establish a committee which will advise and guide the provision of health care for players, and the NFLPA is to be a part of it. While it does not explicitly say the NFLPA has a duty to inform its members on the risks and consequences of head injuries, it is arguable players are justified in relying on any information the committee does release, because the committee has a CBA-mandated advisory role on the provision of health care. To determine this, interpretation of the CBA is necessary.

Unlike *Green*, the justification for reliance on the NFLPA's statements does not arise from a common law duty. "Under the common law . . . it is the employer, not a labor union, that owes employees a duty to exercise reasonable care in providing a safe workplace." *Int'l Bhd. of Elec. Workers v. Hechler*, 481 U.S. 851, 859 (1987). The justification may exist, but it will substantially depend on interpretation of the CBA. Therefore, the claim of negligent misrepresentation is preempted by section 301 of the LMRA.

### *Summary*

Both the duty of fair representation and § 301 of the LMRA completely preempt the claims of this case. Removal was proper, as a federal claim exists.

14

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiffs' "Motion to Remand" [ECF No. 9] is **DENIED**.

So Ordered on this 2nd day of December, 2014.

*/s/ E. Richard Webber*
_____
**E. RICHARD WEBBER**
**SENIOR UNITED STATES DISTRICT JUDGE**